IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BRIAN OSBORN,                                    Case No. 2:15-cv-01807-MA

                        Plaintiff,               OPINION AND ORDER

            v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                        Defendant.

HOWARD D. OLINSKY
Olinsky Law Group
300 S. State St., Suite 420
Syracuse, NY 13202

MARK A. MANNING
Harder Wells Baron & Manning, PC
474 Willamette Street, Suite 200
Eugene, OR 97401

        Attorneys for Plaintiff

1 - OPINION AND ORDER

BILLY J. WILLIAMS
United States Attorney
District of Oregon
JANICE E. HEBERT
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902

HEATHER L. GRIFFITH
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104-7075

 Attorneys for Defendant

MARSH, Judge

 Plaintiff Brian Osborn seeks judicial review of the final decision of the Commissioner of

Social Security denying his application for disability insurance benefits (DIB) under Title II of the

Social Security Act, 42 U.S.C. §§ 401-403, and application for Supplemental Security Income (SSI)

disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This Court

has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons that follow, I affirm

the Commissioner's decision.

## FACTUAL AND PROCEDURAL BACKGROUND

 On December 14, 2011, Plaintiff filed an application for a period of disability and disability

insurance benefits. On December 21, 2011, Plaintiff filed an application for SSI disability benefits.

In both applications, Plaintiff alleges disability beginning December 13, 2011, due to fibromyalgia,

diabetes, and pancreatitis. Plaintiff's claim was denied initially and upon reconsideration. Plaintiff

filed a request for a hearing before an administrative law judge ("ALJ"). An ALJ held a hearing on

April 4, 2014, at which Plaintiff appeared with his attorney and testified. A vocational expert,

Daniel R. McKinney, Sr., also attended the hearing and testified. At the hearing, Plaintiff amended his alleged onset date to April 1, 2012. On April 18, 2014, the ALJ issued an unfavorable decision. The Appeals Council denied Plaintiff's request for review, and therefore, the ALJ's decision became the final decision of the Commissioner for purposes of review.

Born in 1969, Plaintiff was 42 years old on his alleged disability onset date and 44 years old on the date of the ALJ's decision. Plaintiff has obtained a GED, and has past relevant work as a service station attendant and shuttle driver, and has worked as an assembler, catering attendant, site manager, and carpenter.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *Valentine v. Commissioner Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). At step five, the burden shifts to the Commissioner to show that the claimant can do other work which exists in the national economy. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

Plaintiff meets insured status requirements for a DIB application through September 30, 2015. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since April 1, 2012, his amended alleged onset date. At step two, the ALJ found that Plaintiff has the following severe impairments: obesity, fibromyalgia, diabetes, pancreatitis, peripheral neuropathy, degenerative disc disease, depression, and anxiety. At step three, the ALJ found that Plaintiff's impairment or combination of impairments, did not meet or medically equal a listed impairment.

The ALJ assessed Plaintiff with a residual functional capacity ("RFC") to perform light work but with the following limitations:

> no more than occasionally climb, stoop, crouch, kneel or crawl. He is limited to simple, entry-level work. He can have no transactional dealings with the public and no more than occasional interaction with coworkers.

Transcript of Record ("Tr."), ECF No. 12 at 17.

At step four, the ALJ found that Plaintiff is unable to perform his past relevant work. At step five, the ALJ determined that considering Plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that Plaintiff can perform, such as small product assembler and inspector packer. Accordingly, the ALJ concluded that Plaintiff has not been under a disability under the Social Security Act from April 1, 2012, through the date of the ALJ's decision, April 18, 2014.

## ISSUES ON REVIEW

On appeal to this court, Plaintiff contends the following errors were committed: (1) the ALJ improperly evaluated his testimony; (2) the ALJ improperly evaluated the opinion of his treating physician, Elizabeth Neeley, M.D.; (3) the ALJ improperly evaluated the lay testimony of his girlfriend Veronica Schuening; and (4) the ALJ failed to include all of the limitations described by nonexamining agency psychologist Bill Hennings, Ph.D., in the RFC and hypothetical questions posed to the VE. The Commissioner argues that even if the ALJ erred, Plaintiff has not demonstrated harmful error.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied the proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C.

4 - OPINION AND ORDER

§ 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill*, 698 F.3d at 1159 (internal quotations omitted); *Valentine*, 574 F.3d at 690. The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Batson v. Commissioner Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001); *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

## DISCUSSION

### I.    The ALJ Provided Clear and Convincing Reasons for Discounting Plaintiff's Credibility

#### *A.    Standards*

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. 20 C.F.R. §§ 404.1529, 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina,* 674 F.3d at 1112; *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage of the credibility analysis, absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Garrison,* 759 F.3d at 1014-15; *Carmickle, v. Commissioner Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9th Cir. 2008).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Tommasetti*, 533 F.3d at 1039. Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence. *Ghanim*, 763 F.3d at 1163; *Tommasetti*, 533 F.3d at 1039.

At the hearing, Plaintiff testified that he suffers from fibromyalgia, diabetes, depression and anxiety, and has a history of pancreatitis. Plaintiff stated that he has a GED, has training in highway flagging, and received cooking training in the Job Corps. Plaintiff stated that he was self-employed as a gold miner from 1990 to 1997, then visited Mexico, and from 1999 to 2003, was in federal prison. Tr. 37-38. Plaintiff testified that he currently lives with his girlfriend of ten years.

Plaintiff testified that he has someone else do his laundry because he is unable to fold it due to cramping and pain in his hips. Tr. 41. Plaintiff stated that he does all his own cooking. Plaintiff testified that he uses medical marijuana daily for pain, controls his diabetes with medication and diet, and has numbness in his hands that he attributes to his diabetes. Tr. 42-43, 51-52. Plaintiff described that he has anger issues, and was convicted of assault in 1998. Tr. 45. Plaintiff stated that he is overweight, but denied that his weight prevents him from working. Tr. 50. Plaintiff testified that he has been hospitalized three times with pancreatitis, with the last occurrence in 2011. Tr. 50.

Plaintiff estimated that he can sit for 15 minutes before experiencing pain, then he needs to move around or change positions. Plaintiff estimated that he can stand for 30 minutes before needing to change position. Plaintiff estimated he can walk for one block before pain in his hips and

6 - OPINION AND ORDER

knees causes him to stop. Tr. 56. Plaintiff testified that he performs yoga stretches two times a day for 15 minutes each time, then he needs to rest. Plaintiff estimated that can only use his hands 30 percent of each day because his hands cramp up after working for 10 minutes. Tr. 57. Plaintiff also stated that he should not work with the public because he has a bad attitude, and was fired in 1998 for that reason.

In an April 6, 2012 Function Report - Adult, Plaintiff described that in a typical day, he wakes, takes medication, has coffee, and checks the weather on the internet. Plaintiff described that he watches television using a recliner, and that he must sit sideways to be comfortable. Tr. 234. Plaintiff stated that he needs help caring for his two dogs and one cat, and that his daughter will take them for walks. Plaintiff stated he is unable to go camping any longer and can fish only from the bank. Plaintiff stated that pain wakes him every two hours and that he has low back pain and cramping. Tr. 235. Plaintiff noted his is mostly independent with self-care, and does not need reminders to take his medication. Plaintiff indicated that he and his girlfriend take turns with cooking, he has trouble standing at the stove to cook, but his able to do light dishes, laundry, cleaning, and can drive short distances. Tr. 236-37. Plaintiff denies doing any shopping. Tr. 237.

In an April 6, 2012 Pain and Fatigue Questionnaire, Plaintiff stated that he has intense burning, aching and stinging pain in all of his muscles, limbs and joints, and described it as a constant hum of pain. Tr. 242. Plaintiff noted the pain is all day every day and worsened by any activity. Plaintiff noted he does not nap, but he will rest for 45 mintues after taking the dogs outside for 30 minutes. Tr. 242. Plaintiff stated that he can be up and active for one hour before needing to rest for a few days. Tr. 242.

In the decision, the ALJ provided numerous reasons for finding Plaintiff's allegations of total disability less than fully credible. First, the ALJ reasonably determined that the severity of Plaintiff's symptoms is not supported by the objective medical evidence. *Chaudhry v. Astrue*, 688 F.3d 661, 670-71 (9th Cir. 2012) (holding ALJ properly may rely on inconsistency with medical evidence to discount claimant's credibility). The ALJ correctly observed that during the relevant period, Plaintiff has experienced no exacerbations or hospitalizations for his pancreatitis. The ALJ detailed that Plaintiff's complaints of severe bilateral hand limitations are unsupported by imaging or other objective testing. Tr. 22, 924, 1127. And, as the ALJ noted, the imaging of Plaintiff's lumbar spine reveals no abnormalities to support the severity of Plaintiff's symptoms. Tr. 24, 923. Contrary to Plaintiff's suggestion, the objective testing from the consulting neurologist found Plaintiff had full strength with no atrophy in his upper extremities and that his mild neuropathy did not warrant further nerve conduction or EMG testing. Tr. 1126-27. The ALJ also discussed that Plaintiff's complaints of disabling depression and anxiety are not supported by any objective evidence of in-patient or out-patient treatment or counseling. Tr. 21. Instead, as the ALJ detailed, Plaintiff reported that his depression and anxiety were improved on Cymbalta. Tr. 1120. Substantial evidence fully supports the ALJ's findings, and thus, is a reasonable basis upon which to discount Plaintiff's credibility.

Second, the ALJ reasonably found that Plaintiff's conservative course of treatment is inconsistent with his allegations of disabling impairments. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."). The ALJ also correctly indicated that Plaintiff's diabetes was controlled for many years by diet alone, and that in 2013, Plaintiff began medication which has been successfully controlling his symptoms. *Warre v. Commissioner of Soc. Sec. Admin.*,

439 F.3d 1001, 1006 (9th Cir. 2006) (impairments that are effectively controlled with medication are not disabling). The ALJ noted that Plaintiff has received routine treatment for his fibromyalgia, and that Cymbalta appears to be controlling his symptoms. Tr. 24, 795-96. The ALJ's findings are wholly supported by substantial evidence in the record. Again, the ALJ reasonably discounted Plaintiff's credibility on this basis.

Third, the ALJ appropriately considered Plaintiff's sporadic work history before the onset of his disability as undermining his allegation that his impairments are causing his unemployment. *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (noting that claimant "had an extremely poor work history and has shown little propensity to work in her lifetime, which negatively affected her credibility regarding her inability to work"); 20 C.F.R. § 416.929(c)(3) (providing that prior work history may be considered in assessing credibility). As the ALJ noted, in the fifteen years prior to alleging disability, Plaintiff has only five years of earnings at the substantial gainful activity level. Tr. 23, 219. The ALJ's findings are wholly supported by substantial evidence in the record, are a reasonable interpretation of the record, and will not be disturbed.

Fourth, substantial evidence supports the ALJ's finding that Plaintiff's activities of daily living are inconsistent with Plaintiff's allegations of total disability. *See Molina*, 674 F.3d at 1113 (explaining that even activities suggesting some difficulty functioning may be grounds for discrediting claims of a totally debilitating impairment). As the ALJ detailed, Plaintiff is able to house chores, drive short distances, and enjoys cooking, suggesting that Plaintiff is able to spend a significant amount of time on his feet contrary to his allegations. Tr. 23. And, the ALJ found Plaintiff's contention of total disability inconsistent with his reports of working around the house, cooking, and fishing. The ALJ reasonably concluded that Plaintiff's reported activities are

9 - OPINION AND ORDER

inconsistent with his allegations of disabling levels of pain, and reasonably discounted his testimony on this basis.

Fifth, the ALJ reasonably relied upon his own observation of Plaintiff at the hearing in assessing Plaintiff's credibility. The ALJ indicated that Plaintiff alleged he could sit only for 15 to 30 minutes before needing to change position, yet during the hearing, the ALJ observed Plaintiff to sit comfortably throughout. Plaintiff contends that the ALJ improperly relied upon his own observations. I disagree. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (noting the ALJ may rely on his observations as part of an overall credibility determination); *Hanes v. Colvin*, ___ F. App'x ___, 2016 WL 3212172 (9th Cir. June 10, 2016) (holding ALJ did not err in giving slight weight to his personal observations where observations are not the "sole basis" of adverse credibility determination). The ALJ could reasonably find the Plaintiff's allegations were inconsistent with his abilities based on his personal observation. The ALJ did not err in including this factor in the overall credibility analysis.

Plaintiff alleges that the ALJ erred in relying on Plaintiff's receipt of unemployment benefits, criminal history, and lack of candor in failing to report self-employment income when working as a gold miner when discounting his credibility. I conclude that even assuming *arguendo* that the ALJ erred in discounting Plaintiff's credibility on these grounds, the error is harmless. The ALJ's remaining five reasons for discounting Plaintiff's testimony readily provide clear and convincing support for the adverse credibility determination and are wholly supported by substantial evidence in the record. *Carmickle*, 533 F.3d at 1162-63. Examining the record as a whole and the credibility determination specifically, leaves no doubt that the alleged error does "not negate the validity of the ALJ's ultimate [credibility] conclusion." *Batson*, 359 F.3d at 1197. Thus, the alleged error is

harmless. Accordingly, the ALJ's adverse credibility determination is supported by specific, clear, and convincing reasons, backed by substantial evidence and inferences reasonably drawn from the record. *Molina*, 674 F.3d at 1113.

## II.   Medical Evidence

### A.   *Standards*

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle,* 533 F.3d at 1164. To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. *Garrison,* 759 F.3d at 1012; *Ghanim,* 763 F.3d at 1161. When evaluating conflicting opinions, an ALJ is not required to accept an opinion that is not supported by clinical findings, or is brief or conclusory. *Thomas,* 278 F.3d at 957. In addition, a doctor's work restrictions based on a claimant's subjective statements about symptoms are reasonably discounted when the ALJ finds the claimant less than fully credible. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Batson*, 359 F.3d at 1195.

### B.   *The ALJ Provided Specific and Legitimate Reasons for Discounting Dr. Neeley's Opinion*

In an April 2012 opinion, Dr. Neeley opined that Plaintiff can lift five pounds occasionally and two pounds frequently, can walk or stand for two hours and sit for one hour in an eight hour day (with normal breaks). Tr. 779. Dr. Neeley opined that these limitations are due to Plaintiff's muscle tenderness, and that Plaintiff's pain and fatigue greatly effect his function, and that Plaintiff's restrictions began in March 2012 and are expected to continue indefinitely. Tr. 779-80.

In February 2014 Residual Functional Capacity Questionnaire, Dr. Neeley opined that Plaintiff can sit for five minutes and stand or walk for 10 minutes at time, would need to change position frequently, and would require unscheduled breaks every 20 minutes. Tr. 1137. Dr. Neeley opined that Plaintiff could occasionally lift up to 10 pounds and once a day lift 20 pounds, and could use his bilateral hands no more than 30 percent of the day for reaching, grasping, turning, twisting, and fine manipulation. Dr. Neeley opined that Plaintiff would miss work more than four times per month due to impairments, and is not capable of working eight hours a day, five days a week. Tr. 1138. Dr. Neeley appears to suggest these restrictions began in 2008. Tr. 1137-39.

Dr. Neeley also completed a Mental Capacity Assessment on February 25, 2014. Tr. 1141. Dr. Neeley opined that Plaintiff has moderate limitations in his ability to remember locations and work-like procedures, marked limitations in the ability to understand and remember short and simple instructions, and extreme limitations in his ability to understand and remember detailed instructions. Dr. Neeley opined that Plaintiff is markedly limited in his ability to carry out short and simple instructions, as well as detailed instructions, and perform activities within a schedule. Additionally, Dr. Neeley opined that Plaintiff is extremely limited in his ability to maintain concentration for extended periods, work in proximity to others without being distracted, complete a normal workday and workweek without interruptions from psychologically based symptoms, and perform at a consistent pace. Tr. 1141-42. Dr. Neeley opined that Plaintiff is markedly limited in his ability to deal with the general public, and extremely limited in his ability to ask simple questions or request assistance, respond appropriately to criticism from supervisors, or get along with coworkers without engaging in behavioral extremes. Finally, Dr. Neeley opined that Plaintiff is markedly limited in all areas of adaption, such as responding to workplace changes or setting realistic goals. Tr. 1143. Dr.

Neeley indicates that the mental health opinion is supported by Plaintiff's history of head injuries, including two logging injuries, a motor vehicle accident, and a fall onto concrete. Tr. 1143.

Dr. Neeley's opinions were contradicted by those of agency nonexamining physicians and psychologists Sharon B. Eder, M.D., Martin B. Lahr, M.D., Dorothy Anderson, Ph.D., and Bill Hennings, Ph.D. Thus, the ALJ was required only to provide specific and legitimate reasons for discounting Dr. Neeley's opinion. Plaintiff contends that the ALJ's reasoning fails to satisfy this standard, and therefore, has erred. I disagree.

The ALJ provided several specific and legitimate reasons, supported by substantial evidence, for discounting Dr. Neeley's opinions. First, the ALJ noted that Dr. Neeley's opinions are inconsistent with her own treatment notes. Inconsistency between a treating physician's opinion and her own treatment notes is a specific and legitimate reason for rejecting that opinion. *Ghanim*, 763 F.3d at 1161. Here, the ALJ discussed that Dr. Neeley's opinions reflecting such extreme physical limitations due to Plaintiff's muscle tenderness are inconsistent with her own treatment notes that Plaintiff's fibromyalgia was under good control. Tr. 19, 21-22. As the ALJ correctly summarized, Plaintiff complained to Dr. Neeley of all-over body aches in February 2012, and that Dr. Neeley suspected fibromyalgia and recommended Cymbalta. Tr. 474-77. The ALJ noted that although Plaintiff reported continued pain, Plaintiff indicated to Dr. Neeley that his pain was 40 to 50 percent better after he began Cymbalta. Tr. 795-96. As the ALJ observed, in November 2012, Dr. Neeley's treatment notes reflect that Plaintiff reported his fibromyalgia pain under fairly good control, and that she prescribed Vicodin for Plaintiff's continued pain, and that Plaintiff reported Vicodin was helping. Tr. 1133.

Additionally, as the ALJ accurately indicated, Dr. Neeley's treatment notes reflect that Plaintiff's diabetes was well controlled with diet until August 2013, at which time Dr. Neeley prescribed glimepiride, and by the following month, Plaintiff's diabetes was under improved control. Tr. 474, 795, 1102-03, 1107.   Moreover, as the ALJ correctly found, there are no treatment notes in the record before me reflecting that Plaintiff suffered head injuries that Dr. Neeley contended support the extreme mental functioning limitations. The ALJ also discussed that Dr. Neeley's treatment notes regularly include a depression diagnosis, and that they reflect improved mood and reduced anxiety once Plaintiff began Cymbalta. Tr. 21.  To be sure, in August 2012, Dr. Neeley's notes reflect that Plaintiff's depression improved "significantly" on Cymbalta. Tr. 1120. As the ALJ discussed, Plaintiff has not been hospitalized for his depression or anxiety, or been placed in any type of treatment, or counseling.   Therefore, as the ALJ found, Dr. Neeley's 2014 mental health opinion simply does not square with the routine, conservative psychological treatment reflected in Dr. Neeley's treatment notes.   The ALJ's findings are wholly supported by substantial evidence. Therefore, based on the relatively moderate clinical findings and conservative treatment prescribed by Dr. Neeley, the ALJ reasonably concluded her treatment notes were inconsistent with her own opinions.  On the record before me, this reason alone provides a specific and legitimate basis for discounting Dr. Neeley's opinions. *Valentine*, 574 F3d at 692-93 (holding inconsistency with physician's own treatment notes is a specific and legitimate reason to discount that opinion).

Second, the ALJ pointed to contrary contemporaneous objective medical findings to discount Dr. Neeley's opinions. Contradictions between a physician's opinions and medical findings are a legitimate reason to discount a treating physician's opinion. *See Batson,* 359 F.3d at 1195 (ALJ may discredit treating physician's opinion that is unsupported by medical findings). As the ALJ correctly

indicated, Dr. Neeley's assessed physical limitations are not supported by objective medical evidence. For example, as the ALJ discussed, on June 7, 2013, Plaintiff underwent a neurological consultation with Rodrigo Lim, M.D. Tr. 1125. Plaintiff complained of chronic lumbar and cervical spine pain, with arthralgias and myalgias in his upper and lower extremities. Dr. Lim found Plaintiff to have full motor strength with no atrophy, but diminished reflexes symmetrically. Tr. 1126. Plaintiff had decreased proprioception and vibratory sense at the toes, with decreased light touch in stocking distribution up to the ankles bilaterally. Dr. Lim diagnosed peripheral neuropathy, given the impaired sensory modalities and reflexes, but considered it mild and held off ordering nerve conduction testing. Tr. 1127. Dr. Lim also noted Plaintiff's chronic, persistent cervical lumbosacral pain, and ordered CT scans of the neck and back. As the ALJ discussed, the cervical CT in June 2013 showed normal vertebral heights at C1-2 through C4-5, with mild to moderate loss of height at C5-6, with "no significant central canal stenosis is identified," at C6-7. Tr. 20, 924. And, as the ALJ indicated, Plaintiff's June 2013 lumbar CT revealed normal vertebral heights and alignment, no disk narrowing, and small bulges at the L4-5 and L5-S1 levels with mild degenerative changes, and "minimal central stenosis," indicating no "definite abnormalities to account for [Plaintiff's] symptoms." Tr. 20, 923.

Additionally, as the ALJ correctly observed, there is a complete absence of objective record support for Dr. Neeley's assessed 30 percent bilateral hand limitations. Again, Dr. Lim address Plaintiff's alleged neuropathy, but he found it mild and declined to conduct additional objective testing until to see if the condition would persist. Tr. 1127. To be sure, the record is devoid of any nerve conduction or EMG studies.

15 - OPINION AND ORDER

Moreover, as the ALJ indicated, Plaintiff complained of disabling fibromyalgia, but the record is devoid of any rheumatologic tender point testing. As the ALJ accurately detailed, Dr. Neeley's treatment notes do not reflect that she conducted tender point testing to confirm her suspected fibromyalgia diagnosis, nor did she refer Plaintiff to a rheumatologist for follow up care. Tr. 19, 474; *see* SSR 12-2p, *available at* 2012 WL 3104869, at *3 (tender point testing is one method of diagnosing fibromyalgia). Therefore, I conclude the ALJ's finding that there is a lack of contemporaneous objective medical evidence to support Dr. Neeley's severe restrictions is wholly supported by substantial evidence and provides a second specific, legitimate basis for discounting her opinions.

Third, the ALJ discounted Dr. Neeley's opinions because they are inconsistent with Plaintiff's self-reported activities of daily living. As the ALJ indicated, Plaintiff's activities of daily living are at odds with Dr. Neeley's assessed mental limitations, especially the number of "extreme" limitations in Plaintiff's concentration, persistence and pace, and social functioning. And, as the ALJ found, Plaintiff enjoys cooking, looked for work in 2011, and Dr. Neeley's treatment notes reflect that Plaintiff went fishing. Tr. 22, 1113. Examining the record as whole supports the ALJ's rational inference that Dr. Neeley's severe mental and physical limitations are inconsistent with Plaintiff's activities of daily living. *Molina*, 674 F.3d at 1111 (ALJ's finding must be upheld if they support more than one rational interpretation). When combined with the above reasons, this lends an additional legitimate basis for discounting Dr. Neeley's opinions, supported by substantial evidence in the record as a whole.

////

////

16 - OPINION AND ORDER

## III.   <u>Lay Witness Testimony</u>

Lay witness testimony as to a claimant's symptoms or how an impairment affects his ability to work is competent evidence, which the ALJ must take into account. *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009); *Stout v. Commissioner, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ is required to account for competent lay witness testimony, and if it is rejected, provide germane reasons for doing so. *Valentine*, 574 F.3d at 694.

At the hearing, Plaintiff's girlfriend of ten years, Veronica Schuening, testified that Plaintiff has severe depression and is in severe pain. Tr. 61-62. Ms. Scheuning testified that Plaintiff's pain is helped by medical marijuana. Tr. 62. Ms. Schuening also stated that Plaintiff could not work full-time based on his impairments, that the percentage of time that Plaintiff is capable of working is low, and that he would need a job that is flexible to work even part-time. Tr. 63-64.

Plaintiff argues that the ALJ erred in failing to provide germane reasons for discounting Ms. Scheuning's testimony. Specifically, Plaintiff contends that the ALJ erred in discounting the lay testimony because Ms. Scheuning may have a financial incentive in assisting Plaintiff being awarded disability benefits.

In the decision, the ALJ thoroughly discussed Ms. Schuening's testimony and provided two germane reasons for discounting her testimony: (1) it is inconsistent with the objective medical record; and (2) it parroted Plaintiff's discredited testimony. As the ALJ indicated in the decision, Ms. Scheuning's testimony that Plaintiff suffers severe depression, leaving him unable to work full-time is undermined by the largely routine and conservative treatment Plaintiff has received for his allegedly disabling conditions, and fails to account for the fact that Plaintiff's depression has

significantly improved on medication. Tr. 23. As discussed at length above, the ALJ's findings are wholly supported by substantial evidence, and this constitutes a germane reason for discounting the lay testimony in this case. *Bayliss*, 427 F.3d at 1219 (holding inconsistency with medical evidence is a germane reason for discounting lay testimony). Additionally, the ALJ appropriately discounted Ms. Scheuning's testimony premised on Plaintiff's incredible reports. *Valentine*, 574 F.3d at 694 (ALJ provides germane reasons for rejecting lay testimony where that testimony is similar to claimant's validly rejected subjective complaints).

I agree with Plaintiff that the ALJ inappropriately discounted Ms. Scheuning's testimony because she may have been financially motivated to assist Plaintiff in obtaining disability benefits. The record is devoid of any evidence of such a motivation. However, the error is harmless. *Molina*, 674 F.3d at 1122. The ALJ has provided two other germane reasons for discounting her testimony that are supported by substantial evidence in the record as a whole. Accordingly, the ALJ's error is inconsequential to the nondisability determination, and therefore, is harmless.

**IV.    The ALJ Did Not Err in Incorporating the Limitations Described by Dr. Hennings into the RFC**

Plaintiff contends that the ALJ did not adequately incorporate limitations described by nonexamining agency psychologist Dr. Hennings into the RFC and subsequent hypothetical posed to the VE. The RFC is the most a claimant can do despite his limitations and must include all credited limitations supported by substantial evidence in the record. *See Bayliss*, 427 F.3d at 1217. Similarly, the hypothetical question posed to the VE need only include those functional limitations supported by substantial evidence. *Id.* Where the ALJ credits the opinion of a physician, the ALJ must translate the claimant's condition as described in the physician's opinion into functional limitations in the RFC. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008).

On August 27, 2012, Dr. Hennings completed a Mental Residual Functional Capacity Assessment (MRFC), in which he opined that Plaintiff has no limitations in understanding and memory, concentration, persistence and pace, but has some limitations in social interaction. Tr. 105. Specifically, Dr. Hennings opined that Plaintiff is moderately limited in his ability to "interact appropriately with the general public" and is moderately limited in his ability to "accept instructions and respond appropriately to criticism from supervisors." Tr. 105. Dr. Hennings explained that Plaintiff reports attitude problems when dealing with authority figures and frustration when dealing with the public. Tr. 105. To accommodate those limitations, Dr. Hennings recommended that Plaintiff's interactions with the general public be limited to occasional, and that supervisors "present instructions and criticism in a normative manner." Tr. 105.

In the decision, the ALJ accurately summarized Dr. Hennings' opinion, gave it "great weight," and indicated that Plaintiff would be given the "benefit of the doubt as to his complaints of difficulties with mentation and interactivity." Tr. 22. The ALJ incorporated Dr. Hennings' opinion into the RFC by limiting Plaintiff to "simple entry-level work" and that he "can have no transactional dealings with the public and no more than occasional interaction with coworkers." Tr. 17. The ALJ did not include the specific language regarding supervisors presenting instructions and criticism in a "normative manner" into the RFC or hypothetical.

Plaintiff argues that the ALJ's RFC and subsequent hypothetical fails to adequately incorporate Dr. Hennings' assessed moderate limitations concerning interactions with supervisors. Plaintiff maintains that including this additional limitation to the RFC may erode the occupational base, and therefore, the ALJ's step five findings are not supported by substantial evidence and the case must be remanded. Plaintiff's argument misses the mark.

19 - OPINION AND ORDER

Here, the ALJ credited Dr. Hennings' opinion concerning Plaintiff's "mentation and interactivity" by giving Plaintiff the benefit of the doubt. Tr. 22. However, the ALJ did not credit Dr. Hennings opinion concerning Plaintiff's interaction with supervisors and that supervisors present instructions and criticism in a "normative manner." As discussed above, the ALJ appropriately rejected Dr. Neeley's opinion that Plaintiff has "extreme" limitations in his ability to accept instruction and respond appropriately to criticism from supervisors because those limitations are unsupported by clinical findings, unsupported by Dr. Neeley's treatment notes, and are inconsistent with Plaintiff's noted mood improvement on medication and conservative treatment. Thus, this limitation has been validly discredited elsewhere in the opinion.

Moreover, Plaintiff does not suggest any concrete functional limitations resulting from Dr. Hennings' opinion that criticism and instructions from a supervisor be presented in a "normative manner." An ALJ's RFC need not correspond precisely to a physician's limitations; rather, the ALJ must resolve ambiguities in the record and translate Plaintiff's impairments into concrete functional limitations in the RFC. *Stubbs-Danielson*, 539 F.3d at 1174. The ALJ's determination to not include limitations concerning supervisors is a reasonable interpretation of the record, supported by substantial evidence in the record as a whole. *Britton v. Colvin*, 787 F.3d 1011, 1013 (9th Cir. 2015). Therefore, the ALJ did not err in fashioning the RFC, and the subsequent hypothetical posed to the VE included all credited limitations. *Osenbrock*, 240 F.3d at 1165 (holding an ALJ may "limit a hypothetical to those impairments that are supported by substantial evidence in the record.")

////

////

////

20 - OPINION AND ORDER

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision is AFFIRMED. This action is DISMISSED.

IT IS SO ORDERED.

DATED this _19_ day of OCTOBER, 2016.

Macolm F. Marsh
United States District Judge